UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Milford-Bennington Railroad Co.,
Inc. and Peter Leishman</u>

    v.                                    Case No. 10-cv-264-PB
                                            Opinion No. 2011 DNH 101

<u>Pan Am Railways, Inc., Boston and
Maine Corporation, and Springfield
Terminal Railway Company</u>

**O R D E R**

Milford-Bennington Railroad Co. ("MBR") and its employee, Peter Leishman, have sued Pan Am Railways, Inc., Boston and Maine Corporation, and Springfield Terminal Railway (collectively "Pan Am") alleging breach of contract and breach of good faith and fair dealing claims.  Plaintiffs base their causes of action on claimed breaches of the Trackage Rights Agreement ("TRA") that grants MBR the non-exclusive right to use railroad tracks owned by Pan Am in Wilton and Milford, New Hampshire.

Pan Am relied on the TRA in barring Leishman from using its tracks after he was involved in an accident at a highway

crossing while operating an MBR train.[1] According to Pan Am, it was entitled to ban Leishman because he violated a Pan Am safety rule that required him to either provide an on-ground warning at the crossing or station a qualified employee at the crossing who had the ability to communicate with the train.[2]

Plaintiffs argue that Pan Am violated the TRA when it excluded Leishman from the tracks because: (1) Leishman did not violate Pan Am's safety rules; (2) Pan Am did not provide Leishman with the procedural protections he was entitled to under the TRA;[3] and (3) the penalty that Pan Am imposed for Leishman's misconduct is excessive.

---

[1] The provision of the TRA that Pan Am relied on provides that "[Pan Am] shall have the right to exclude from the Trackage any employee of MBR determined by [Pan Am] . . . to have violated [Pan Am's] rules, regulations, orders, practices, or instructions." Agreement, Doc. No. 32-3, at 6.

[2] The rule that Leishman allegedly violated provides in pertinent part that "[t]rains being operated from other than the leading end must not enter a highway crossing at grade until on-ground warning is provided by a crew member or other qualified employee, except when it is visually determined that: . . . [a] designated and qualified employee is stationed at the crossing and has the ability to communicate with trains . . . ." Doc. No. 5-13 at 2.

[3] The TRA provides that MBR must be "notified in advance" of any investigation or hearing by Pan Am concerning a violation of any Pan Am operating rule or practice by an MBR employee. Agreement at 6. The agreement also requires that any investigation or hearing must be "conducted in accordance with the collective

crossing while operating an MBR train.[1] According to Pan Am, it was entitled to ban Leishman because he violated a Pan Am safety rule that required him to either provide an on-ground warning at the crossing or station a qualified employee at the crossing who had the ability to communicate with the train.[2]

Plaintiffs argue that Pan Am violated the TRA when it excluded Leishman from the tracks because: (1) Leishman did not violate Pan Am's safety rules; (2) Pan Am did not provide Leishman with the procedural protections he was entitled to under the TRA;[3] and (3) the penalty that Pan Am imposed for Leishman's misconduct is excessive.

---

[1] The provision of the TRA that Pan Am relied on provides that "[Pan Am] shall have the right to exclude from the Trackage any employee of MBR determined by [Pan Am] . . . to have violated [Pan Am's] rules, regulations, orders, practices, or instructions." Agreement, Doc. No. 32-3, at 6.

[2] The rule that Leishman allegedly violated provides in pertinent part that "[t]rains being operated from other than the leading end must not enter a highway crossing at grade until on-ground warning is provided by a crew member or other qualified employee, except when it is visually determined that: . . . [a] designated and qualified employee is stationed at the crossing and has the ability to communicate with trains . . . ." Doc. No. 5-13 at 2.

[3] The TRA provides that MBR must be "notified in advance" of any investigation or hearing by Pan Am concerning a violation of any Pan Am operating rule or practice by an MBR employee. Agreement at 6. The agreement also requires that any investigation or hearing must be "conducted in accordance with the collective

Pan Am has filed a motion to dismiss arguing that plaintiffs' claims are expressly preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), which provides in pertinent part that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."[4]  49 U.S.C. § 10501.  Its reasoning begins with the premise that state law claims for breach of contract and breach of the duty of good faith and fair dealing are "remedies" as that term is used in § 10501.  It then argues that trackage rights agreements amount to the "regulation of rail transportation" because such agreements ordinarily are subject to approval by the Surface Transportation Board ("STB"), 49 U.S.C. § 11323(a)(6), and the

---

bargaining agreements, if any, that pertain to said employee or employees."  Id.  Plaintiffs base their procedural arguments on these provisions.

[4] It is unclear whether Pan Am also claims that plaintiffs' causes of action are preempted because the ICCTA gives the Board exclusive jurisdiction over "transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers . . . ."  49 U.S.C. § 10501.  Because Pan Am has not presented a clearly expressed argument based on this provision, I decline to consider whether it provides Pan Am with an argument for preemption that it does not have under the Act's express preemption clause.

Board's authority with respect to the approval of such agreements is "exclusive," 49 U.S.C. § 11321.

I am unpersuaded by Pan Am's argument.  The STB plainly has exclusive authority to either approve trackage rights agreements or to exempt such agreements from the approval requirement.  49 U.S.C. § 11323.  Moreover, a rail carrier that enters into a trackage rights agreement is exempt from state law to the extent that an exemption is "necessary to let that rail carrier . . . carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction."  49 U.S.C. § 11321(a).  The ICCTA, however, does not give the STB the power to resolve disputes between rail carriers concerning the meaning and operation of trackage rights agreements.  Nor does the fact that such agreements are subject to Board approval unless exempted transform privately agreed-upon terms in a trackage rights agreement into the "regulation of rail transportation."  Thus, I am not persuaded that contract claims arising from a trackage rights agreements are preempted for the reasons claimed by Pan Am.[5]

---

[5] Pan Am alternatively argues that plaintiffs' claims are preempted because they arise from a claimed breach of a Pan Am safety rule.  Plaintiffs do not argue, however, that Pan Am

The present dispute concerns Pan Am's right to bar Leishman from its tracks pursuant to the TRA. Because the dispute is not a dispute "with respect to the regulation of rail transportation," it is not preempted by the ICCTA. Pan Am's motion to dismiss on this basis is denied.[6]

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 23, 2011

cc:  Craig S. Donais, Esq.
     Kevin E. Verge, Esq.
     Christopher H.M. Carter, Esq.
     Michael J. Connolly, Esq.

---

adopted an unreasonable rule in violation of 49 U.S.C. § 10702. Moreover, the statutory provisions Pan Am cites in support of its preemption argument do not address disputes concerning the meaning and enforcement of trackage rights agreements. See 49 U.S.C. §§ 10702, 11121, 11122. Thus, they have no bearing on the preemption issue that is presented by Pan Am's motion.

[6] I will address Pan Am's other arguments for dismissal in a separate order.