UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MILFORD-BENNINGTON RAILROAD CO., INC. | ) ) ) ) |
| Plaintiffs, | ) Docket No. 1:10-cv-00264-PB |
| v. | ) ) ) |
| PAN AM RAILWAYS, INC., BOSTON AND MAINE CORPORATION, and SPRINGFIELD TERMINAL RAILWAY COMPANY | ) ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF ROBERT BURNS (CORRECTED)

I, Robert Burns, hereby declare as follows under penalties of perjury:

1. I am Corporate Counsel for Pan Am Railways, Inc., Boston and Maine Corporation, and Springfield Terminal Railway Company (collectively, "Pan Am.").

2. I make this declaration in support of the Reply to Plaintiff's Objection to Motion for Summary Judgment.

3. In the spring of 2010, I was involved in the negotiations with Milford-Bennington Railroad Co. ("MBR") regarding a new Trackage Rights Agreement. As explained in a letter dated April 8, 2010, Pan Am had proposed a mandatory minimum of 5,500 (or 11,000 round trip) cars annually. A copy of the correspondence dated April 8, 2010 is attached to the Objection to the Motion for Summary Judgment at Exhibit S. I explained in the letter that Pan Am had arrived at the mandatory minimum based on statements made under oath by Mr. Leishman to the Surface Transportation Board. I also explained that Pan Am was willing to

forego any mandatory minimum for six months, at which time that the parties could discuss a different mandatory minimum based on MBR's projected needs.

4. At the time I sent the letter on April 8, 2010, I was aware that Pan Am's investigation was ongoing relating to the October 22, 2009 collision. I was also aware that Pan Am was seeking to expel Mr. Leishman from operating on the track. It was nonetheless appropriate for Pan Am to continue its negotiations with MBR relating to the TRA because Am never sought to prevent MBR from operating on its track.

5. Mr. Leishman sent a letter to the Surface Transportation Board dated March 17, 2010. The letter states that Mr. Leishman was expelled from the track, and it also states that he discussed that issue with me and that I did not have any information regarding the reason that Mr. Leishman was expelled. Although I recall Mr. Leishman informing me of his expulsion by telephone, I do not have any recollection of that alleged conversation being on March 17, 2010. However, based on Mr. Leishman's letter dated March 17, 2010, it appears that I may have been notified that Mr. Leishman was expelled from the track on March 17 2010.

6. I subsequently met with Mr. Leishman on March 19, 2010 to discuss negotiations relating to the TRA. I do not recall discussing issues relating to Mr. Leishman being expelled from the track during our meeting on March 19, 2010. I also do not have any recollection that I was aware of the expulsion at the time of the meeting.[1]

7. Mr. Leishman subsequently sent me a letter dated March 21, 2010 to discuss suggested areas of compromise. The letter does not reference any issues relating to Mr. Leishman being expelled from the track. I later received an email from Mr. Leishman dated

---

[1] The previously filed version of this document which was attached to the Reply contained a typographical error. The word "not" was inadvertently omitted from the third sentence in paragraph 6. This typographical error has been corrected.

2

March 26, 2010 in which he explained that he had learned that the reason he was expelled from the track was due to safety/operating rule violations.

8. After receiving the email on March 26, 2010, I continued to negotiate a new TRA with MBR, which included sending the letter to Mr. Leishman dated April 8, 2010. The negotiations of the TRA were unrelated to Pan Am's decision to expel Mr. Leishman. Pan Am was not seeking to prohibit MBR from operating on the track. In fact, after Mr. Leishman was expelled from the track, Mr. Leishman notified Pan Am that he did not have adequate employees to operate the trains. Pan Am offered to supply its own employees and also provided names of possible candidates for employment to Mr. Leishman to ensure that MBR could continue its operations. MBR rejected that offer on the basis that it would be too costly.

Signed under the penalties of perjury this 30th day of September 2011.

/s/ Robert Burns
Robert Burns, Corporate Counsel